Kenneth ARCHIBALD, Administrator of the
Estate of Mildred Pauline Archibald,
Deceased, Plaintiff-Appellant,

v.

MIDWEST PAPER STOCK COMPANY and
Cecil J. Morris, Defendants-Appellees.

MIDWEST PAPER STOCK COMPANY,
Cross-Petitioner-Appellee,

v.

DART TRANSIT CO., Defendant to Cross-
Petition-Appellant.

No. 53955.

Supreme Court of Iowa.

May 5, 1970.
Rehearing Denied June 22, 1970.

Arthur Popham, Kansas City, Mo., and
Pryor, Riley, Jones & Walsh, Burlington,
for plaintiff-appellant and cross-petition
defendant-appellant.

Fred Cromwell, Burlington, for defend-
ants-appellees.

LARSON, Justice.

The sole question before us in this third
appeal involving Midwest Paper Stock
Company (hereinafter called Midwest), Ce-
cil J. Morris, and Dart Transit Co. (here-
inafter called Dart), is whether under a
lease agreement between Midwest and

Dart, Midwest's driver Morris was to be protected under a liability insurance policy Dart, the lessee, was to carry while a truck operation was under its control.

The original action in this involved case was brought by Kenneth Archibald, Administrator of the Estate of Mildred Pauline Archibald, deceased, against Midwest and Morris on January 7, 1965. In a collision on September 18, 1963, between a passenger automobile owned and operated by Mrs. Archibald and a truck owned by Midwest and driven by Morris, Mrs. Archibald was killed. The original petition alleged her death was caused by Midwest's truck negligently operated by its driver. Upon cross-petition brought by Midwest Dart was made a party defendant. It alleged that at the time of the accident the truck was being operated by Dart under a lease agreement, Exhibit "A", with the owner Midwest who supplied the driver Morris. Settlement with the estate was made by Dart on July 20, 1964, for $15,000, and Dart was assigned all its claims against Midwest and Morris.

In a prior decision we considered this lease agreement and held Dart could not recover from Midwest for the loss under the terms of the trip lease. Archibald v. Midwest Paper Stock Co., 260 Iowa 1, 148 N.W.2d 460. In another decision found in 158 N.W.2d 739, we held that, as a result of an assignment from Archibald, the administrator, Dart was the real party in interest in its effort to recover over.

On June 7, 1968, Midwest's motion for summary judgment under Rule 237, R.C.P., contending that due to the prior decisions of this court it was released from any claims arising in the action, was sustained. On January 29, 1969, Dart's motion for summary judgment against Morris under Rules 237 and 238, based upon a failure of Morris to answer a request for admissions, was considered and continued. On February 10, 1969, a motion to dismiss was filed by Morris and Midwest. Its basis was that any action that Dart might have against

either was invalid because Dart under the agreement Exhibit "A" was required to carry liability insurance for the benefit of Midwest and Morris. They maintained that Dart being adjudicated, the real party in interest was obligated to protect Midwest and Morris from liability, and thus could only recover indemnity against itself.

In this phase of the action Dart had asked for a default judgment against Morris, based primarily upon his failure to plead and answer a request for admissions. Dart's motion for summary judgment and default judgment was overruled, and the Midwest-Morris motion for dismissal was sustained. The trial court's ruling was not predicated on the factual issue of Morris' negligence or on the question of claim liquidation. The motion was sustained on the ground that, since Morris was the employee of Midwest, the provisions of the trip lease obligated Dart to protect both the lessor and its driver with liability insurance while the equipment was being operated in the service of the lessee Dart. When Dart's motion for rehearing was denied on June 12, 1969, it appealed. We affirm.

Appellant assigns as error the trial court's action in overruling Dart's motion for default and for summary judgments against Morris, and the sustaining of the Midwest-Morris motion to dismiss.

I. Appellant Dart contends that, since the lease agreement Exhibit "A" did not specifically include the driver Morris, he, as Dart's agent, was primarily liable, and Dart was only secondarily or vicariously liable, but as the employee of Midwest, Morris was covered under omnibus provisions of Midwest's insurance and that its carrier should be held liable to indemnify Dart for its loss paid to the injured party.

Dart argues that by the terms of the lease it was obligated to carry liability insurance for the protection of only the lessee, the public, and the lessor, and that this did not include the driver, who at the time of this accident was Dart's agent under

its direction and control and, as such, was primarily liable for his own negligence and for the amount paid by Dart to settle plaintiff's claim herein.

Appellant relies upon the following authorities: Transport Indemnity Co. v. American Fidelity & Casualty Co., Second Appellate District, Division One, California Court of Appeal, 84 Cal.Rptr. 856 (filed February 27, 1970); Pacific National Ins. Co. v. Transport Ins. Co., 8 Cir., 341 F.2d 514; Brannaker v. Transamerican Freight Lines, Inc. (Mo.), 428 S.W.2d 524; Barsh Truck Line, Inc. v. Jerry Lipps, Inc. (Mo. App.), 424 S.W.2d 81; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516. Under the view we take of this matter they are not applicable, for they involve for the most part disputes between insurance carriers as to their liability under the policies provided.

Morris contends he is protected by lessee's contractual obligation to carry liability insurance for his protection, that Dart is solely liable for the loss and cannot shift it to another, and that to permit recovery against Morris, an employee of Midwest, would be contra to Dart's obligation to protect the lessor's driver under the lease.

Thus, the nub of this controversy is whether Morris, as lessor's employee, was included as a party protected by the lease agreement between lessor and lessee. It must be conceded, if he was so protected, then Dart's liability to insure against losses resulting from driver negligence in the operation of the leased equipment would avoid its claim for indemnity against the lessor's insurance carrier and only result in a claim for indemnity against itself.

■ II. The rule is well settled in this jurisdiction that a contract should be read and interpreted as an entirety rather than seriatim by clauses. Mealey v. Kanealy, 226 Iowa 1266, 1277, 286 N.W. 500, 506, 131 A.L.R. 945, 951. Also see our first Archibald case, 260 Iowa 1, 6, 148 N.W. 2d 460, 463.

Although we have not passed specifically on this phase of the controversy between the parties, in denying recovery against Midwest we construed this agreement in the first Archibald case and, in so doing, relied upon and followed the pronouncements in American Fidelity and Casualty Co. v. Simmons, 253 F.2d 634 (4 Cir. 1958), a case very similar to the case at bar. In Simmons, the district court's pronouncement, approved by the appellate court, when considering a somewhat similar agreement between lessee and lessor, stated at page 636 of 253 F.2d: "The writing properly interpreted clearly shows that the public liability is to protect the equipment for both and the cost is to be paid by the lessee out of the hired equipment's earnings, * * *. The lease does not warrant an implication that the insurance carrier would have redress against lessor or lessee for indemnity." The court then said: "We think, as did the District Judge, that the policy must be interpreted to cover the liability of Simmons and the driver of the truck for injuries and damage inflicted while it was being operated in the business of Webb; but, quite apart from this, we think it perfectly clear that the casualty company is not entitled to recover from Simmons the judgment that it has paid under its policy for damages inflicted by the operator of the truck in the business of Webb."

Among other authorities adhering to this view, see War Emergency Co-op. Ass'n v. Widenhouse, 169 F.2d 403 (4 Cir.); Newsome v. Surratt, 237 N.C. 297, 74 S.E.2d 732; American Fidelity & Casualty Co. v. Johnson (Ky.), 336 S.W.2d 351; and Annotation, 17 A.L.R.2d 1388.

■ Appellees do not take issue with the general rule allowing indemnity under circumstances as appear herein in the absence of any agreement to the contrary, and authority teaches that, as against the person whose personal wrong is responsible for harm to a third person, one vicariously liable who has been compelled to respond in damages may have complete in-

demnity. See Harper & James, The Law of Torts, Vol. 1, § 10.2, page 723; 41 Am. Jur.2d, Indemnity, § 20; Pacific National Ins. Co. v. Transport Ins. Co., supra, 341 F.2d 514 (1965). However, they urge that such indemnity here is precluded because of the terms of the leasing agreement. We now consider that point.

Paragraph 10 of the lease agreement provides: "The LESSEE is to carry and pay for public liability, property damage, and cargo insurance incident to the operation of said equipment herein while such leased equipment is being operated exclusively in the interests of the LESSEE, and not otherwise, but it is specifically and mutually agreed by and between LESSOR and LESSEE that such insurance so agreed to be carried by LESSEE, shall be insurance for the benefit of the LESSEE and the public, and LESSOR only while in the service of the LESSEE, except as hereinbefore provided."

 It is undisputed that when this accident occurred, the equipment was in the exclusive service of the lessee, and if public liability and property damage insurance is to be carried for the benefit of the lessor in such instances, it clearly includes the lessor's driver furnished with the equipment when under the lessee's exclusive direction and control. We find no merit in the contention that only the lessee, the public, and the lessor were to be protected by this agreement, or that it be narrowly construed to exclude the driver of the vehicle no matter whose employee he was at the time. Then, too, this agreement form was furnished by lessee and must be construed most favorably to lessor. 3 Corbin on Contracts, § 559. To exclude his employee driver would be furnishing partial protection to lessor, and we have no hesitancy in finding the driver was to be included in lessee's obligation here. To provide otherwise a specific exception was needed in the agreement, but nowhere in that agreement do we find such an insurance obligation placed upon lessor. In this regard, see our discussion in the first Ar-

chibald case at page 7 of 260 Iowa, page 464 of 148 N.W.2d.

We also note it was said in Simmons at page 636 of 253 F.2d: "The lease agreement provided that Webb (lessee) should procure insurance to cover this liability, and the reasonable interpretation of the agreement is that it should protect against *all* liability arising out of the operation, not that it should protect merely the liability of Webb with the right of Webb or the insurer to recover over against Simmons the amount of any liability they might be required to pay. Without going into the question as to whether the liability of Webb, without reference to the agreement respecting insurance, is primary or secondary, it would be unconscionable, in the light of the provision in the lease agreement, to allow Webb to recover of Simmons indemnity for the liability which Webb had agreed with Simmons to cover with insurance; and, of course, the rights of the casualty company by way of subrogation cannot be superior to the rights of Webb." (Emphasis supplied.)

It is true in Pacific National Ins. Co. v. Transport Ins. Co., supra, involving a dispute between insurance companies as to their respective coverages, the court came to the opposite result when others than the lessee and lessor were considered. There the 8th Circuit Court reasoned that the lease "does not prevent Superior (lessee) or its subrogee (insurance company) from seeking indemnity from defendants on account of the tortious conduct of Fred Russell (driver employee), their omnibus insured, for whom Superior has been held vicariously liable in the state court action. The liability of defendants in the instant case is predicated upon this theory and the lease contract in no way precludes the relief now sought by plaintiff." In other words, that court said it was "not inclined to stretch the meaning of the terms and conditions of the lease agreement to the point where Superior, or its subrogee is prohibited from enforcing an *existing* legal right against one who is not a party to the

agreement." (Emphasis supplied.) Although there are some differences in these two federal cases, it would seem they are not clearly distinguishable. We have already chosen to follow Simmons and adhere to that view in this instance.

III. Appellant relies upon the recent California case of Transport Indemnity Co. v. American Fidelity & Casualty Co., supra, also involving a dispute between two insurance carriers, which by way of declaratory relief found American, insurer of lessor, primarily obligated to indemnify lessee and lessor against a judgment against them as a result of a wrongful death action. Lessor furnished the driver, with lessee in "complete control" and "direction", and lessee agreed to assume full responsibility to the public arising out of the operation of the equipment. Although admitting, as between the parties to the lease, the agreement pertaining to liability insurance coverage could be a matter of significance, the court there said, where the issue concerns which of *two insurers*, whose policies may cover a particular incident is to bear the loss, it construed that significance as bearing primarily upon the construction of insurance policies with respect to the coverage afforded the possessor of the ultimate liability for the damage. It held, since the policies of insurance were issued *well before* the lease and without reference to that transaction, the wording of the subsequent lease could not be said to affect the intent of the parties with respect to the coverage afforded by the earlier policies.

In the case at bar we are not advised as to the time the respective insurance policies, if any, were issued, but note the lease refers to an agreement of Dart to provide public liability insurance to protect itself and the public and the lessor, which may signify that insurance was to be secured coincident with the usage under the lease. In any event, we are not persuaded the lease agreement here should be ignored and that lessor's driver was not protected from the liability alleged which might here-

after be the basis of an indemnity claim against Midwest's insurance carrier.

Under our interpretation of the involved lease agreement and its effect upon the liability of the parties thereto, we are disposed to hold the trial court here was correct in refusing Dart's demand for default judgment and summary judgment and in dismissing Dart's claim against Morris. We now hold that Morris was protected by the lease agreement to provide liability insurance for lessee's operations, and that Dart could not by way of subrogation collect from Morris or Midwest's insurance carrier under an omnibus provision of its policy.

Affirmed.

All Justices concur.